Robert L. Levy (RL-1633)
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666
Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE LYNCH

----------------------------------------------------x

YACHI CHEN,

                Plaintiff,

    -against-

NEW YORK UNIVERSITY,
NEW YORK UNIVERSITY SCHOOL
OF MEDICINE and WENBIAO GAN,

                Defendants.

----------------------------------------------------x

08 Civ CV 2499

COMPLAINT

PLAINTIFF DEMANDS
TRIAL BY JURY

Plaintiff Yachi Chen, by her attorneys, Bantle & Levy LLP, alleges for her complaint against defendants as follows:

## NATURE OF THE ACTION

1.    This is an action for sex discrimination and retaliation for opposing discrimination in the workplace, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, New York Executive Law § 290 et seq., (the "Executive Law"), and the New York City Administrative Code § 8-101 et seq., (the "Administrative Code"). Plaintiff seeks declaratory and injunctive relief and damages.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e et

seq., as amended, and 28 U.S.C. §§ 1331, 1343(a)(3) and (4).  In addition, plaintiff asserts state

and city anti-discrimination law claims under this Court's supplemental jurisdiction pursuant to

28 U.S.C. § 1367(a).

3.      A substantial part of the unlawful acts and discriminatory practices alleged

herein were committed within the district of the United States District Court, Southern District of

New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. § 1391(b).

4.      All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C.

§ 2000e-5(f)(3), have occurred or been complied with:

a.      A charge of employment discrimination alleging, inter alia,

retaliation for opposing discrimination in the workplace was filed with the Equal Employment

Opportunity Commission ("EEOC") within 300 days of the adverse actions of which plaintiff

complains in this action.

b.      A notification of right to sue was issued by the EEOC on or about

December 12, 2007 and received by plaintiff on or about December 15, 2007.

c.      This complaint has been filed within 90 days of receipt of the

EEOC's notification of the right to sue.

5.      Plaintiff has served a copy of this complaint with the Corporation Counsel

for the City of New York and with the New York City Commission on Human Rights as required

under New York City Administrative Code, § 8-502.

2

**PARTIES**

6.      Plaintiff Yachi Chen is a resident of the State of New Jersey, currently residing at 36 Pershing Place, Cresskill, New Jersey.

7.      Plaintiff is a thirty-nine year old Taiwanese-American woman.

8.      Upon information and belief, defendant New York University ("NYU") is a New York corporation that maintains its principal place of business within the County, City and State of New York.

9.      Upon information and belief, defendant New York University School of Medicine ("NYUSOM") is an administrative unit of New York University, and maintains its principal place of business at 550 First Avenue, within the County, City and State of New York.

10.     At all times relevant to this complaint, NYU and NYUSOM (collectively, the ("NYU Defendants") operated the Skirball Institute of Biomolecular Medicine (the "Skirball Institute"), a research facility located at 540 First Avenue, New York, New York 10016.

11.     At all times relevant to this complaint, the NYU Defendants were employers engaged in industry affecting commerce and has employed more than 100 employees within the meaning of 42 U.S.C. § 2000e-(b), (g) and (h). The NYU Defendants also are persons within the meaning of New York Executive Law § 292(1) and New York City Administrative Code § 8-102(1).

12.     At all times relevant to this complaint, defendant Wenbiao Gan ("Dr. Gan") was an agent of the NYU Defendants and/or a management employee within the meaning of 42 U.S.C. § 2000e(f).

13.     Dr. Gan oversaw a laboratory at the Skirball Institute primarily engaged in

3

research related to the structural plasticity of synapses in transgenic mice (the "Laboratory").

14.     As a management employee of the NYU Defendants, Dr. Gan had authority to act on behalf of the NYU Defendants in the hiring and firing of employees, such as plaintiff, employed in the Laboratory at the Skirball Institute.

## STATEMENT OF FACTS

15.     Plaintiff commenced employment with the NYU Defendants as a Postdoctoral Fellow in the Skirball Institute on or about January 2, 2004.

16.     At all times relevant herein, plaintiff was directly supervised by Dr. Gan, and worked exclusively within the research laboratory under his direction and control.

17.     Plaintiff continued to be employed in the Laboratory until the termination of her employment effective December 31, 2006.

18.     As a Postdoctoral Fellow at the Skirball Institute, plaintiff was charged with working on four research projects analyzing images of neurons in the brains of transgenic mice.

19.     Each of plaintiff's research projects involved performing surgeries on transgenic mice, imaging neurons in the cortex of the brain and analyzing these images for changes in brain connectivity over time.

20.     At all times relevant herein, plaintiff's primary research project was the interneuron/Kv3.2 knock-out mice project, involving the capture and analysis of post-surgical images of neurons in the brains of transgenic mice that have had their normal brain activity altered by the elimination of a gene encoding Kv3.2 potassium channel (the "Knock-Out Project").

4

21.    At all times relevant herein, Dr. Gan and plaintiff understood and agreed that the goal of the Knock-Out Project was to publish a scholarly research article describing the Knock-Out Project's findings.

22.    As Principal Investigator of the Knock-Out Project, Dr. Gan was to be responsible for working collaboratively with plaintiff to ensure that her draft research paper for the Knock-Out Project would, after appropriate modification, be published in a reputable science journal.

23.    Once she commenced employment at NYUSOM, plaintiff diligently and capably performed all aspects of her responsibilities in the Laboratory.

24.    Throughout 2004 and 2005, plaintiff, inter alia, performed a substantial number of experiments for the Knock-Out Project and produced a rich amount of research data.

25.    Throughout this period of her employment, plaintiff consistently received positive feedback regarding her performance from Dr. Gan, both orally and in writing.

26.    Throughout this period of plaintiff's employment, Dr. Gan routinely praised plaintiff as hard working and responsible, and advised plaintiff that he was confident that her efforts on the Knock-Out Project would be rewarded.

27.    Throughout this period of plaintiff's employment, Dr. Gan routinely expressed satisfaction with the progress plaintiff was making on the Knock-Out Project.

28.    At no time during this period of plaintiff's employment did Dr. Gan ever suggest that plaintiff was taking too long to complete the Knock-Out Project and/or that plaintiff lacked sufficient commitment to the Laboratory and its research goals.

29.    In late January 2006, plaintiff commenced maternity leave in connection

5

with the birth of her first child.

30.    On January 26, 2006, plaintiff gave birth to a daughter, Emma Lin, by
Cesarian-section.

31.    Although plaintiff had planned to return to work at the Laboratory one
month after the birth of her child, plaintiff developed an infection at the site of her
Cesarian-section incision that led to an open wound condition.

32.    As a result of her open wound condition, plaintiff was forced to extend her
leave from the Skirball Institute into the early part of April 2006.

33.    Upon learning that plaintiff needed to extend her leave, Dr. Gan, for the
first time during plaintiff's employment at NYUSOM, expressed dissatisfaction with plaintiff.

34.    Although plaintiff was entitled to receive her salary pursuant to the clear
terms of NYUSOM's Postdoctoral Handbook, Dr. Gan openly complained about having to pay
plaintiff while she was on extended maternity leave.

35.    Under threat by Dr. Gan of being denied pay for the full duration of her
leave, plaintiff agreed to work full-time from her home for approximately the last two weeks of
her leave.

36.    Plaintiff formally returned to work at the Skirball Institute on April 10,
2006.

37.    Notwithstanding plaintiff's willingness to work from home during the
latter portion of her post-partum convalescence, within days of her return to work, Dr. Gan began
accusing plaintiff of not being sufficiently committed to her professional endeavors within the
Laboratory, including openly questioning plaintiff's commitment to her work on the Knock-Out

Project.

38.    Whereas Dr. Gan had been supportive of plaintiff and her research work prior to her maternity leave, when plaintiff returned to work at the Laboratory Dr. Gan intensified his criticisms of plaintiff, treated her in a hostile and abusive manner and withdrew his professional support for the Knock-Out Project.

39.    Whereas prior to her leave Dr. Gan had met with plaintiff approximately once every two weeks to discuss the research data plaintiff had produced for the Knock-Out Project, after plaintiff returned from leave, Dr. Gan made himself available to meet with plaintiff no more than once a month.

40.    Whereas prior to her leave Dr. Gan generally addressed plaintiff in a civil and professional manner, after plaintiff returned from leave, Dr. Gan often was verbally abusive to plaintiff, including screaming at her during their professional interactions.

41.    Whereas prior to her leave Dr. Gan had expressed satisfaction with the progress plaintiff was making on the Knock-Out Project and had not raised any performance issues or behavioral concerns, after plaintiff returned from leave, Dr. Gan repeatedly badgered plaintiff about her needing to complete the Knock-Out Project and leave his lab as soon as possible.

42.    Upon information and belief, Dr. Gan did not similarly question the ongoing commitment to the Laboratory of his male employees when these employees took extended leaves or vacations.

43.    In May 2006, Dr. Gan arbitrarily denied plaintiff's request to attend the 2006 Society for Neuroscience conference (to be held in November 2006), while authorizing

7

certain male employees within the Laboratory to attend.

44.     Despite the hostile working environment created by Dr. Gan after plaintiff's return from leave, during the next several months, plaintiff made significant strides in translating her research data into a credible first draft of a research paper for the Knock-Out Project.

45.     For the latter portion of this period (the summer months), Dr. Gan was not present at the Laboratory and had limited contact with plaintiff.

46.     On August 8, 2006, without prior notice to or discussion with plaintiff, Dr. Gan sent plaintiff an email in which he advised her that he would be terminating his financial support of her employment at NYUSOM in or about October 2006, and that she needed to finish the Knock-Out Project by that time.

47.     Upon information and belief, at the time Dr. Gan sent plaintiff this August 8, 2006 email he was well aware that pursuant to NYUSOM's Postdoctoral Handbook, postdoctoral employees were appointed on an annual basis and were entitled to receive a "final re-appointment letter" providing one year's notice of termination.

48.     Upon information and belief, at the time Dr. Gan sent plaintiff this August 8, 2006 email he was well aware that the deadline he was imposing for completion of the Knock-Out Project was unreasonable.

49.     Dr. Gan's attempt to terminate plaintiff's employment effective October 2006 violated the terms of NYUSOM's Postdoctoral Handbook which required, inter alia, that postdoctoral employees be given at least one year's notice of termination.

50.     Upon information and belief, Dr. Gan's efforts to terminate plaintiff's

8

employment in contravention of the terms of the NYUSOM Postdoctoral Handbook were motivated by discriminatory animus toward plaintiff based on her gender arising from her having taken maternity leave earlier in 2006.

51.    When Dr. Gan returned to the Laboratory in or about late August 2006, plaintiff advised Dr. Gan that she believed he was discriminating against her based on her gender by treating her differently than her male colleagues in the Laboratory, including singling her out for termination.

52.    Although, at that meeting, plaintiff raised concerns about Dr. Gan's harassing behavior, his withdrawal of professional support and the unreasonable deadline he had unilaterally imposed on completion of the Knock-Out Project, Dr. Gan was unwilling to substantively address any of these issues.

53.    Subsequent to this meeting, Dr. Gan intensified his harassment of plaintiff, including publicly referring to plaintiff as "a burden" within the Laboratory and refusing to include plaintiff in formal and informal conversations among the other employees in the Laboratory.

54.    Upon information and belief, Dr. Gan also advised plaintiff's colleagues within the Laboratory not to collaborate with plaintiff or share certain research data produced in the Laboratory with plaintiff.

55.    At the same time Dr. Gan was actively attempting to terminate plaintiff's employment effective October 2006, Dr. Gan was recruiting a male candidate to replace plaintiff in the Laboratory.

56.    Upon information and belief, Dr. Gan established the October 2006

9

deadline for the Knock-Out Project based on his preliminary understanding of when this male candidate was available to come to work in the Laboratory.

57.    On or about September 8, 2006, plaintiff presented Dr. Gan with a first draft of her research paper for the Knock-Out Project.

58.    Rather than fulfilling his obligations as Principal Investigator for the Knock-Out Project by substantively reviewing plaintiff's draft and working with plaintiff to publish her research findings, Dr. Gan provided plaintiff only cursory feedback on the draft and refused to meaningfully engage with plaintiff on a strategy for moving plaintiff's manuscript from draft to published research article.

59.    Among other things, Dr. Gan reneged on a promise to review and provide feedback on plaintiff's data during September 2006.

60.    On or about September 11, 2006, having been unable to resolve her employment issues directly with Dr. Gan, plaintiff met with NYUSOM's Postdoctoral Program Coordinator, Dr. Robert Tillman and advised him of Dr. Gan's inappropriate and discriminatory conduct.

61.    During her meeting with Dr. Tillman, plaintiff requested that Dr. Tillman intervene on her behalf to ensure that Dr. Gan ceased his harassing conduct and permitted her to continue her employment in the Laboratory for an appropriate period of time so that she could complete her research work.

62.    Upon information and belief, within a day of his meeting with plaintiff, Dr. Tillman advised Dr. Gan of his meeting with plaintiff and the concerns plaintiff had raised about Dr. Gan's conduct.

10

63.     Upon information and belief, during his conversation with Dr. Tillman, Dr. Gan falsely alleged that plaintiff was less productive than the other postdoctoral employees in the Laboratory and that she had behavioral problems.

64.     Upon information and belief, at the time Dr. Gan made these statements about plaintiff to Dr. Tillman he knew that these statements were untrue.

65.     As of the time Dr. Gan made disparaging remarks about plaintiff to Dr. Tillman, plaintiff had never been the subject of employee discipline or otherwise advised of poor performance, and plaintiff was the only postdoctoral employee in the Laboratory actively engaged in preparing a draft of a research article for publication.

66.     Upon information and belief, during his conversation with Dr. Tillman, or shortly thereafter, Dr. Gan advised Dr. Tillman that he wanted to terminate plaintiff's employment.

67.     Upon information and belief, on or about September 12, 2006, Dr. Tillman consented to the termination of plaintiff's employment.

68.     Upon information and belief, on or about September 12, 2006, Dr. Tillman prepared a termination letter for use by Dr. Gan to advise plaintiff of the termination of her employment effective December 31, 2006 (the "Termination Letter").

69.     Upon information and belief, prior to preparing the Termination Letter, Dr. Tillman made no effort to investigate plaintiff's claims and/or to investigate the legitimacy of Dr. Gan's disparaging remarks about plaintiff's productivity and professionalism.

70.     On or about September 14, 2006, plaintiff was given the Termination Letter, signed by Dr. Gan, by a member of NYUSOM's Human Resources Department.

11

71.    Upon information and belief, at the time plaintiff was presented with the Termination Letter, Dr. Gan and Dr. Tillman were aware that the letter violated NYUSOM's Postdoctoral Handbook, which expressly required that postdoctoral employees "must be" provided with a "final re-appointment letter" providing one year's notice of termination.

72.    Plaintiff was never provided a final re-appointment letter in compliance with the terms of NYUSOM's Postdoctoral Handbook or otherwise given the requisite one year's notice of termination.

73.    In the Termination Letter, Dr. Gan purported to justify the termination of plaintiff's employment on December 31, 2006 by reference to a provision of NYUSOM's Postdoctoral Handbook providing, in part, that postdoctoral employees should not remain categorized as "postdocs" for more than five years of postdoctoral employment.

74.    As NYUSOM's Postdoctoral Handbook makes clear, however, the five year rule does not require termination of a postdoctoral employee, but, rather, that, "[a]fter the fifth year, any Postdoc who continues to work at the School, can no longer continue to function or be classified as a Postdoc [and], if they continue employment ... the Postdoc's title will be changed to Research Scientist."

75.    Consistent with the Postdoctoral Handbook, postdoctoral employees at NYUSOM routinely were employed beyond their fifth full year of postdoctoral employment.

76.    Upon information and belief, several male postdoctoral employees at the Skirball Institute, including at least one male employee within Dr. Gan's Laboratory, were reclassified as Research Scientists and/or Assistant Research Scientists after they had completed five years of postdoctoral employment.

12

77.     Upon information and belief, prior to Dr. Gan's reliance on the five year rule as the purported basis for terminating plaintiff's employment, NYUSOM had no history of applying this rule as basis for terminating postdoctoral employees within the Skirball Institute.

78.     Defendants' reliance on the five year rule as the purported basis for termination of plaintiff's employment on December 31, 2006 was pretextual.

79.     Because NYUSOM's Human Resources professionals were aware that the so-called five year rule did not justify plaintiff's termination, NYUSOM's internal personnel documents relating to plaintiff's termination did not adopt this rationale as the basis for her termination.

80.     In its internal personnel documents, NYUSOM purported to classify plaintiff's termination as, alternatively, due to lack of funding and/or as a staff reduction, without reference to plaintiff's length of service at NYUSOM.

81.     Neither lack of funding nor staff reduction provides the actual rationale for defendants' termination of plaintiff's employment; both purported rationales are pretextual.

82.     Upon information and belief, the National Institute of Health grant that had been used by Dr. Gan to fund the majority of plaintiff's employment in the Laboratory does not expire until early 2009.

83.     Prior to plaintiff's last day of employment, Dr. Gan had already arranged for plaintiff's male replacement to begin work in the Laboratory.

84.     At or about the time plaintiff's employment was terminated, Dr. Gan also hired at least one other employee to begin working at the Laboratory.

85.     When plaintiff raised the issue of the misapplication of the Postdoctoral

13

Handbook with Dr. Gan and NYUSOM's Human Resources Department, plaintiff was subjected to further retaliation by Dr. Gan.

86.    In particular, Dr. Gan steadfastly refused to provide plaintiff with any feedback on her completed draft of the Knock-Out Project research paper or otherwise assist plaintiff in transitioning the paper to a scholarly article.

87.    By refusing to give plaintiff feedback on her draft research paper and/or to work with plaintiff to publish her research paper in a reputable science journal, Dr. Gan breached his obligations as Principal Investigator on the Knock-Out Project.

88.    By refusing to work with plaintiff to publish her research paper, Dr. Gan also breached his responsibilities under NYUSOM's Postdoctoral Handbook, which requires him to provide postdoctoral employees, "support, resources, guidance and intellectual leadership", in connection with postdoctoral employees efforts to publish their research findings in a reputable scholarly journal.

89.    By refusing to work with plaintiff to publish her research paper, Dr. Gan effectively denied plaintiff the opportunity to realize her goal of having her work on the Knock-Out Project turned into a published, scholarly article.

90.    Upon information and belief, at all times relevant herein, Dr. Gan was aware that the lack of a published research article arising from her work on the Knock-Out Project would have devastating negative effects on the development of plaintiff's career, including without limitation, substantially damaging plaintiff's chances to obtain a faculty appointment or, alternatively, to obtain a position as a principal scientist within the pharmaceutical and/or /biotechnology industries.

14

91.    Dr. Gan also falsely advised at least one member of NYUSOM's Human Resources Department that plaintiff had been, "uncooperative, unprofessional, and often combative and insubordinate" during the past several months, and that plaintiff had taken certain unexplained absences from the Laboratory.

92.    Dr. Gan's actions in this regard were punitive, retaliatory and a further manifestation of the discriminatory and harassing conduct to which plaintiff had been subjected since her return from maternity leave in April 2006.

93.    In sum, as a result of defendants' discriminatory and retaliatory conduct, plaintiff was subjected to: (1) repeated harassment and intimidation by Dr. Gan; (2) denial of routine support, guidance and assistance in completing the Knock-Out Project, including being provided virtually no assistance in getting her research paper published in a reputable science journal; (3) denial of a promotion to Research Scientist pursuant to NYUSOM's Postdoctoral Handbook effective after her completion of five years of postdoctoral employment in or about February 2006; (4) denial of one year's notice of termination pursuant to NYUSOM's Postdoctoral Handbook; and (5) termination of her employment.

94.    By the above series of adverse employment actions, defendants have denied plaintiff many of the rights and privileges of employment, and have subjected plaintiff to a hostile work environment.

95.    As a consequence of the foregoing, plaintiff has been unlawfully terminated from her employment with NYUSOM and, thereby, has been denied continuing opportunities for promotion, training, advancement, recognition, and increased compensation.

96.    As a result of defendants' discriminatory and retaliatory conduct, plaintiff

has suffered a loss of income and benefits.

97.    As a result of defendants' discriminatory and retaliatory conduct, plaintiff has sustained serious pain and suffering, and severe mental and emotional harm and distress.

98.    As a result of defendants' discriminatory and retaliatory conduct, plaintiff's ability to advance her professional career has been materially and, perhaps, irrevocably, damaged.

99.    The aforesaid acts and conduct by defendants, and their agents and employees, were performed willfully, intentionally, maliciously and with reckless indifference to plaintiff's protected rights.

## COUNT I

100.    Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 99 as if fully set forth herein.

101.    As a result of defendants' aforesaid acts, the NYU Defendants have discriminated against plaintiff on account of her sex in violation of Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e-2(a).

102.    As a result of the NYU Defendants's discriminatory and adverse acts, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

## COUNT II

103.    Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 102 as if fully set forth herein.

16

104.    In retaliation for plaintiff's opposition to the discriminatory practices of Dr. Gan and other employees of the NYU Defendants, the NYU Defendants have discriminated against plaintiff with respect to the terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act as amended, 42 U.S.C. § 2000e-2(a).

105.    As a result of defendants' retaliation against her, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

<u>**COUNT III**</u>

106.    Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 105 as if fully set forth herein.

107.    As a result of the aforementioned acts, the NYU Defendants have discriminated against plaintiff on account of her sex with respect to the terms, conditions and privileges of her employment in violation of the New York Executive Law § 296(7).

108.    As a result of the aforementioned acts, Dr. Gan has violated the New York Executive Law § 290 et seq. by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

109.    As a result of defendants' discrimination against her, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

17

**COUNT IV**

110.   Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 109 as if fully set forth herein.

111.   In retaliation for plaintiff's opposition to the discriminatory practices of Dr. Gan and other employees of the NYU Defendants, the NYU Defendants have discriminated against plaintiff with respect to the terms, conditions and privileges of employment in violation of the New York Executive Law § 296(7).

112.   As a result of the aforementioned act, Dr. Gan has violated the New York Executive Law § 290 et seq. by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

113.   As a result of defendants' discrimination against her, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

**COUNT V**

114.   Plaintiff repeats and realleges paragraphs 1 through 113 as if fully set forth herein.

115.   As a result of the aforementioned acts, the NYU Defendants have discriminated against plaintiff on account of her sex with respect to the terms, conditions and privileges of her employment in violation of the New York City Administrative Code § 8-101, et seq.

116.   As a result of the aforementioned actions, Dr. Gan has violated the New

18

York City Administrative Code § 8-107(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

117.    As a result of defendants' discrimination against her, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

### COUNT VI

118.    Plaintiff repeats and realleges paragraphs 1 through 117 as if fully set forth herein.

119.    In retaliation for plaintiff's opposition to the discriminatory practices of Dr. Gan and other employees of the NYU Defendants, the NYU Defendants have discriminated against plaintiff with respect to the terms, conditions and privileges of employment in violation of the New York City Administrative Code § 8-101(7).

120.    As a result of the aforementioned actions, Dr. Gan has violated the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined herein.

121.    As a result of defendants' retaliation against her, plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

**WHEREFORE**, plaintiff respectfully requests that this court grant judgment for plaintiff and that it order and award plaintiff the following relief against defendants:

(1)     A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated plaintiff's rights as secured by Title VII, 42 U.S.C. § 2000e-2(a), the New York Executive Law, § 290 et seq., and the New York City Administrative Code, § 8-101, et seq.;

(2)     An injunction restraining and enjoining defendants from engaging in further discriminatory and/or retaliatory acts;

(3)     Reinstatement to the highest position to which plaintiff was and would be entitled with salary, benefits, job responsibilities and other terms of employment commensurate with such position;

(4)     Damages in the form of (a) back pay with interest based on plaintiff's appropriate compensation had she not been retaliated against; (b) front-pay; and (c) reimbursement for lost pension, social security, experience, training opportunities and other benefits, in an amount to be shown at trial;

(5)     Compensatory damages for her emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount not less than $1,000,000;

(6)     Punitive damages in an amount not less than $2,000,000;

(7)     Attorneys fees;

(8)     Costs and disbursements;

(9)     Interest; and

(10)    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.

Dated: New York, New York
       March 11, 2008


                                        BANTLE & LEVY LLP
                                        817 Broadway
                                        New York, New York 10003
                                        (212) 228-9666

                                        By: _____
                                               Robert L. Levy

                                        Attorneys for Plaintiff

21